UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TOMMY WAYNE BROTHERTON, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 4:12-CV-2233 NAB |
| | ) |
| JAY CASSADY,[1] | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

This action is before the Court on Petitioner Tommy Wayne Brotherton's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. [Doc. 1.] Respondent Jeff Norman filed a response to the Petition for Writ of Habeas Corpus. [Doc. 14.] The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). [Doc. 11.] For the reasons set forth below, Brotherton's petition for writ of habeas corpus will be denied.

**I.     Background**

After a jury trial, Brotherton was convicted of first degree statutory sodomy and first degree child molestation for sexually abusing his daughter, R.B. (Resp't Ex. 1 at 57-58.) He was sentenced to life imprisonment on the statutory sodomy charge and fifteen years on the child molestation charge. *Id*. The following evidence, in the light most favorable to the verdict, was

---

[1] During the pendency of the Petition, Jay Cassady became the warden at Jefferson City Correctional Center where Petitioner is incarcerated. Pursuant to Rule 2 of the Rules Governing Section 2254 Cases in the United States District Courts, the Respondent is the state officer who has custody. Therefore, the Clerk of Court is ordered to add Jay Cassady as the Respondent and remove Jeff Norman's name.

presented at trial.[2] The evidence against Brotherton consisted of a video in which he confessed to molesting R.B. but denied ever penetrating her and a video of R.B.'s forensic interview. One of the officers who arrested Brotherton testified, as did the forensic interviewer, and R.B. R.B. testified that Brotherton began sexually abusing her when she was approximately five years old. She further testified that Brotherton forced her to engage in oral, vaginal, and anal intercourse. Although Brotherton vehemently denied penetrating R.B.'s anus, R.B. told the forensic interviewer that, "It hurt sometimes when he slipped and it went into my butt…." At trial, R.B. testified that Brotherton's penis entered her anus and that "he didn't actually get it in very far, but he did slip when he was doing it." She further explained this happened several times and Brotherton told her he had "slipped," but "stopped telling me because I knew that, what he was going to say…."

During deliberations, the jurors submitted notes requesting a dictionary and to rewatch the video of R.B.'s interview to determine the sodomy charge. (Resp't Ex. 1 at 49-50.) The trial court instructed them to be guided by the instructions and verdict forms given to them. *Id.* at 51. The jury found Brotherton guilty of both first degree child molestation and first degree statutory sodomy.

Before trial, the court held a hearing on Brotherton's motion to suppress his confession. The following was the evidence presented at the suppression hearing.[3] Detective Sergeant Chris Bartlett and Detective Shannon Bowen arrested Brotherton on October 11, 2006, following

---

[2] These facts are taken substantially from the Supplemental Memorandum accompanying the Missouri Court of Appeals decision in Brotherton's direct appeal. (Resp't Ex. 3.) A state court's determination of a factual issue made by a state court shall be presumed to be correct. 28 U.S.C. § 2254.

[3] These facts are taken substantially from the Supplemental Memorandum accompanying the Missouri Court of Appeals decision in the appeal of the denial of Brotherton's Rule 29.15 motion. (Resp't Ex. 6.) A state court's determination of a factual issue made by a state court shall be presumed to be correct. 28 U.S.C. § 2254.

2

R.B.'s forensic interview. Brotherton was arrested at SSM St. Joseph Health Center ("St. Joseph's") where he was receiving mental health services. The officers testified that Brotherton was lethargic, and that hospital staff had informed them that Brotherton had been given psychotropic medication. The officers advised Brotherton of his *Miranda* rights and Brotherton agreed to be interviewed by the officers. The court denied the Brotherton's motion, finding that Brotherton's statements were voluntary and that he had been *Mirandized* and knowingly and intelligently waived his rights. (Resp't Ex. 8 at 29.)

Following his conviction, Brotherton filed a direct appeal challenging the sufficiency of the evidence on the statutory sodomy charge. (Resp't Ex. 2.) The Missouri Court of Appeals affirmed the verdict, finding that the jury was entitled to resolve the conflict between Brotherton and R.B. in favor of R.B. (Resp't Ex. 3.)

Following his direct appeal, Brotherton filed a *pro se* Motion to Vacate, Set Aside or Correct the Judgment or Sentence pursuant to Missouri Supreme Court Rule 29.15. (Resp't Ex. 4 at 3-16.) Brotherton's post-conviction counsel filed a Statement in Lieu of Filing a Rule 29.15 Amended Motion, stating that there were no additional meritorious claims to be raised in an amended motion and no additional facts to support the claims raised in Brotherton's *pro se* motion. *Id.* at 17-19. Brotherton filed a response, objecting to the failure to file an amended motion and requesting new counsel. *Id.* 20-21. The post-conviction motion court summarily denied Brotherton's Rule 29.15 motion without an evidentiary hearing. *Id.* at 22-23.

Brotherton appealed the denial of his post-conviction motion to the Missouri Court of Appeals. (Resp't Ex. 5.) He raised two points on appeal: (1) that the motion court erred in failing to grant an evidentiary hearing with respect to his claim that trial counsel was ineffective in failing to investigate and adduce evidence of Brotherton's mental incompetency and (2) that

the motion court erred in failing to enter adequate findings of fact and conclusions of law. *Id*. The Missouri Court of Appeals affirmed the denial of Brotherton's Rule 29.15 motion. (Resp't Ex. 6.) The court found that Brotherton had not properly plead his ineffectiveness claim before the motion court and the court did not reach his second point. *Id*.

Brotherton then filed his Petition for Writ of Habeas Corpus in this court on November 28, 2012. [Doc 1.] The Respondent filed a response in opposition. [Doc 14.] Brotherton filed a reply. [Doc. 21.]

**II.  Standard of Review**

"The writ of habeas corpus stands as a safeguard against imprisonment of those held in violation of the law. Judges must be vigilant and independent in reviewing petitions for the writ, a commitment that entails substantial judicial resources." *Harrington v. Richter*, 562 U.S. 86, 91 (2011). "In general, if a convicted state criminal defendant can show a federal habeas court that his conviction rests upon a violation of the Federal Constitution, he may well obtain a writ of habeas corpus that requires a new trial, a new sentence, or release." *Trevino v. Thaler*, 133 S.Ct. 1911, 1917 (2013). The Anti-Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 (AEDPA) applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996. *Lindh v. Murphy*, 521 U.S. 320, 326-29 (1997). In conducting habeas review pursuant to 28 U.S.C. § 2254, a federal court is limited to deciding whether a claim that was adjudicated on the merits in state court proceedings (1) resulted in a decision that is contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d). A determination of a factual issue made by a state court is

4

presumed to be correct unless the petitioner successfully rebuts the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

For purposes of § 2254(d)(1), the phrase "clearly established federal law refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision." *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003). "In other words, clearly established federal law under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Id.* at 72. To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent which he thinks the state courts acted contrary to or unreasonably applied. *Buchheit v. Norris*, 459 F.3d 849, 853 (8th Cir. 2006).

A state court's decision is "contrary to" clearly established Supreme Court precedent "if the state court either 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or 'confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the] precedent.'" *Penry v. Johnson*, 532 U.S. 782, 792 (2001) (citing *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000)). A state court decision is an unreasonable application of clearly established Supreme Court precedent if it correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case. *Id.* (citing *Williams*, 529 U.S. at 407–408). "A federal habeas court making the unreasonable application inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Penry*, 532 U.S. at 793. "A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the state court proceedings,' 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record."

*Evanstad v. Carlson*, 470 F.3d 777, 782 (8th Cir. 2006). A "readiness to attribute error is inconsistent with the presumption that state courts know and follow the law." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). AEDPA's highly deferential standard demands that state court decisions be given the benefit of the doubt. *Id.*

## III. Discussion

### A. No Valid *Miranda* Waiver (Ground 1)

Brotherton contends that he did not validly waive his *Miranda* rights before making a confession. He asserts that he was not Mirandized and that he invoked his right to counsel in the car ride to the Sheriff's Department following his arrest. This claim is procedurally defaulted because Brotherton did not raise it in his direct appeal or at any stage of his post-conviction proceedings. *Sweet v. Delo*, 125 F.3d 1144, 1149 (8th Cir. 1997). Brotherton has not demonstrated adequate cause to excuse the default. *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991).

Even if the claim is not procedurally defaulted, it lacks merit. At the suppression hearing, Detective Sergeant Chris Bartlett and Detective Shannon Bowen testified that Bartlett read Brotherton his *Miranda* rights when Brotherton was placed in their vehicle. (Resp't Ex. 8 at 41-42, 56, 59, 67, 76.) Detective Bowen testified that he saw Brotherton say he understood and that Brotherton appeared to understand. *Id.* at 74-76. Detective Bartlett testified that Brotherton made a knowing and voluntary waiver. *Id.* at 58. Brotherton asserts that the officers lied and he was not Mirandized.

At some point during Brotherton's video interrogation at the Sheriff's Department, Brotherton asks, "If there's a lawyer here, how does it hinder you?" *Id.* at 83. Brotherton asserts that he requested counsel during the car ride and that his question during the video interrogation

6

was a reference to that request. However, Detective Bartlett testified that at no time did he say "I want an attorney" or "I want to speak with my attorney." *Id.* at 56-57. Detective Bowen testified that if Brotherton had said "I want to stop and I want to consult with my attorney," they would have terminated the interrogation. *Id.* at 75.

Unless a suspect makes "an unambiguous or unequivocal request for counsel," officers have no obligation to stop questioning him. *Davis v. United States*, 512 U.S. 452, 461-62, 114 S. Ct. 2350, 2356, 129 L. Ed. 2d 362 (1994). "Maybe I should talk to a lawyer" is not sufficient for a suspect to invoke his right to counsel. *Id.* at 462. Brotherton's assertions notwithstanding,[4] the evidence before the trial court established that Brotherton was Mirandized and that he did not make an unequivocal request for counsel. The trial court's decision that Brotherton validly waived his *Miranda* rights was not contrary to or an unreasonable application of clearly established Federal law, nor was it based on an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d). The Court finds that Brotherton's claim that he did not validly waive his *Miranda* rights should be denied.

### B. Prosecutorial Misconduct (Ground 1)

Brotherton contends that the prosecution committed due process violations by failing to produce the audio recording of the car ride following his arrest and a medical exam conducted on R.B. Brotherton raised both claims in his Rule 29.15 motion. (Resp't Ex. 4 at 16). However, they are procedurally defaulted because he did not preserve them on appeal. "In Missouri, a claim must be presented at each step of the judicial process in order to avoid default." *Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012) (internal quotations omitted); *Sweet*, 125 F.3d at

---

[4] "Statements that are self-serving and unsupported by the evidence do not establish a basis for relief under section 2255." *Reid v. U.S.*, No. 4:10CV583 CAS, 2010 WL 3829397, at *3 (E.D. Mo. Sept. 23, 2010) (citing *U.S. v. Apfel*, 97 F.3d 1074, 1077 (8th Cir. 1996)).

7

1149; *Flieger v. Delo*, 16 F.3d 878, 885 (8th Cir. 1994); *Osborne v. Purkett*, 411 F.3d 911, 919 (8th Cir. 2005). Brotherton has not demonstrated adequate cause to excuse the default. *Coleman*, 501 U.S. at 750.

Even if the claims are not procedurally defaulted, they lack merit. Detective Bartlett testified that the recording was accidentally rendered irretrievable when the police department switched to a new computer system. (Resp't Ex. 8 at 48-50.). "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Arizona v. Youngblood*, 488 U.S. 51, 58, 109 S. Ct. 333, 337, 102 L. Ed. 2d 281 (1988). Brotherton has made no showing that the recording was lost or destroyed in bad faith.

Brotherton further contends that the prosecution should have produced a medical exam referenced by Detective Bartlett. In the video interrogation of Brotherton, Detective Bartlett tells him that a medical exam showed R.B. had a rectal tear. (Resp't Ex. 8 at 227, 281.) During opening statements, Brotherton's counsel emphasized to the jury that Detective Bartlett had lied about the exam results as a police tactic to obtain a confession. *Id.* at 226-27. Detective Bartlett testified at trial that, at the time of the interrogation, he was aware from Detective Bowen that a medical exam had been conducted but "wasn't privy to all of the findings." *Id.* at 281. He further testified that he was aware there was a tear but he "couldn't have said where it was" or "couldn't recite what the doctor said." *Id.* At that point, the prosecutor began to ask "And to your knowledge, do you know whether or not there actually was—" but Brotherton's counsel objected and the objection was sustained. *Id.* at 282. There is no further mention of a tear or the medical exam.

Brotherton contends that the prosecution failed to produce the medical exam in violation of *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963). "A *Brady* violation occurs when the government fails to disclose evidence materially favorable to the accused." *Youngblood v. W. Virginia*, 547 U.S. 867, 869, 126 S. Ct. 2188, 2190, 165 L. Ed. 2d 269 (2006). Evidence is "favorable" if it is either exculpatory or impeaching, *id.*, and "material" if there is a reasonable probability it would have changed the result of the proceeding, i.e., a probability sufficient to undermine confidence in the verdict, *Strickler v. Greene*, 527 U.S. 263, 289-90, 119 S. Ct. 1936, 1952, 144 L. Ed. 2d 286 (1999). Brotherton has made no showing that the medical exam would have been exculpatory or impeaching, much less that it would have undermined confidence in the jury's verdict against him. The Court finds that his claims of prosecutorial misconduct should be denied.

**C.     Denial of Counsel (Ground 2)**

Brotherton argues that he was denied his right to counsel at critical pretrial proceedings. Brotherton raised this claim in his Rule 29.15 motion. (Resp't Ex. 4 at 14). However, it is procedurally defaulted because he did not preserve it on appeal. "In Missouri, a claim must be presented at each step of the judicial process in order to avoid default." *Arnold*, 675 F.3d at 1087 (internal quotations omitted); *Sweet*, 125 F.3d at 1149; *Flieger*, 16 F.3d at 885; *Osborne*, 411 F.3d at 919. Brotherton has not demonstrated adequate cause to excuse the default. *Coleman*, 501 U.S. at 750.

**D.     Abandonment by Counsel (Grounds 2 and 4)**

Brotherton contends that the assistant public defender who initially represented him, Mark C. Evans, abandoned representation one week before trial. Brotherton further argues that Evans, and not assistant public defender Gary Grunick, should have deposed R.B. since Evans

9

was counsel of record at the time. Brotherton raised this claim in his Rule 29.15 motion. (Resp't Ex. 4 at 9). However, it is procedurally defaulted because he did not preserve it on appeal. "In Missouri, a claim must be presented at each step of the judicial process in order to avoid default." *Arnold*, 675 F.3d at 1087 (internal quotations omitted); *Sweet*, 125 F.3d at 1149; *Flieger*, 16 F.3d at 885; *Osborne*, 411 F.3d at 919. Brotherton has not demonstrated adequate cause to excuse the default. *Coleman*, 501 U.S. at 750.

Even if the claim was not procedurally defaulted, it lacks merit. Mark Evans entered his appearance in November of 2008. (Resp't Ex. 1 at 1-10.) In February of 2009, Brotherton moved to disqualify Evans and have new counsel appointed. *Id*. The motion was denied. *Id*. On June 26, 2009, assistant public defender Gary Grunick deposed R.B. on Brotherton's behalf. On July 1, 2009, Grunick filed a formal transfer of attorney and a motion to suppress and motion in limine. *Id*. Brotherton cannot claim that Evans abandoned representation and improperly failed to depose R.B. when Brotherton filed a motion to disqualify Evans and, even though the motion was denied, the Public Defender accommodated his request by assigning Brotherton's case to another assistant public defender. The Court finds that Brotherton's claim of abandonment should be denied.

## E.     Ineffective Assistance of Counsel (Ground 3)

Brotherton contends that his trial counsel, assistant public defender Gary Grunick, was ineffective in failing to properly prepare for the suppression hearing and trial. Namely, Brotherton contends that Grunick failed to: call witnesses regarding Brotherton's mental incompetency, consult with Brotherton before the suppression hearing, depose his arresting officers, file additional pretrial motions including motions to continue, and present evidence and call witnesses at trial.

### 1. Procedural Default

"[A] habeas petitioner must have raised both the factual and legal bases for each ineffectiveness of counsel claim in the state courts in order to preserve the claim for federal review." *Flieger v. Delo*, 16 F.3d 878, 885 (8th Cir. 1994). "In Missouri, a claim must be presented at each step of the judicial process in order to avoid default." *Arnold v. Dormire*, 675 F.3d 1082, 1087 (8th Cir. 2012) (internal quotations omitted). Where a petitioner raises an ineffectiveness claim in his Rule 29.15 motion, but does not include that specific claim in his appeal, the claim is procedurally barred. *Flieger*, 16 F.3d at 885; *Osborne v. Purkett*, 411 F.3d 911, 919 (8th Cir. 2005). On appeal from the denial of his Rule 29.15 motion, Brotherton's sole claim of ineffectiveness was that Grunick failed to investigate and adduce evidence of Brotherton's mental incompetency. (Resp't Ex. 5.) Therefore, his remaining ineffectiveness claims are procedurally barred.

With regard to Brotherton's claim that Grunick failed to investigate and adduce evidence of Brotherton's mental incompetency, the Missouri Court of Appeals held that Brotherton did not properly plead his claim under Rule 29.15 because his motion did not specify any witness that counsel should have called, what the witness testimony would have been, or whether any witness was available to testify. (Resp't Ex. 6 at 6.) The pleading requirement of Rule 29.15 is an independent and adequate state procedural rule that forecloses federal habeas review. *Barnett v. Roper*, 541 F.3d 804, 808-11 (8th Cir. 2008). Therefore, Brotherton's claim that Grunick was ineffective in failing to investigate and adduce evidence of Brotherton's mental incompetency is also procedurally barred.

The Court may reach the merits of a procedurally barred claim only if "the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of

federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Brotherton argues that the procedural default of his ineffectiveness claims should be excused because his post-conviction counsel was ineffective in failing to file an amended Rule 29.15 motion. He relies on *Martinez v. Ryan*, 132 S. Ct. 1309, 1318-19, 182 L. Ed. 2d 272 (2012). *Martinez* held that ineffective assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial. 132 S. Ct. at 1315.

With the exception of Brotherton's claim, preserved on appeal, that Grunick was failed to investigate and adduce evidence of Brotherton's mental incompetency, *Martinez* is inapplicable. Brotherton's other ineffectiveness claims were procedurally defaulted because post-conviction *appellate* counsel failed to preserve them. *Martinez* does not apply to claims of ineffectiveness by post-conviction appellate counsel. 132 S. Ct. at 1320 ("The holding in this case does not concern attorney errors in … appeals from initial-review collateral proceedings."); *Arnold*, 675 F.3d at 1087 (holding based on *Martinez* that any error by post-conviction appellate counsel would not constitute cause to excuse petitioner's procedural default).

Brotherton's post-conviction appellate counsel did, however, preserve his claim that Grunick was ineffective in failing to investigate and adduce evidence of Brotherton's mental incompetency. To excuse default of this claim under *Martinez*, Brotherton must show that his post-conviction counsel was ineffective under the standards of *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), and "that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must

demonstrate that the claim has some merit." *Martinez*, 132 S. Ct. at 1318. The Court will therefore turn to the merits of Brotherton's underlying claim.

### 2. Merits of Brotherton's Claim Regarding Mental Incompetency

In his *pro se* Rule 29.15 motion, Brotherton claims that Grunick was ineffective in failing to investigate potential witnesses who could testify to Brotherton's mental condition and the effect of any medications at the time of his arrest and interrogation. Brotherton claimed that because of his mental condition, he did not voluntarily waive his *Miranda* rights and therefore his confession was not voluntary. Brotherton argues that Grunick failed to locate staff from St. Joseph's or have him evaluated by a psychiatrist or other expert. (Resp't Ex. 4 at 11.) In his federal petition, Brotherton specifies that Grunick should have interviewed Jennifer Shea, the Director of the Psychiatric Ward at St. Joseph's. [Doc. 1 p. 27.] To establish Grunick was ineffective, Brotherton must show that (1) Grunick's performance fell below an objective standard of reasonableness and (2) Brotherton was prejudiced by Grunick's performance. *Strickland,* 466 U.S. at 687–88. "[T]here is no reason for a court deciding an ineffective assistance claim to approach the [two-pronged] inquiry in order or even to address both components if the defendant makes an insufficient showing on one." *Id.* at 687.

Assuming Grunick was deficient in failing to investigate potential witnesses who could testify to Brotherton's mental condition and the effect of any medications at the time of his arrest and interrogation, Brotherton cannot show that he was prejudiced. To establish prejudice, Brotherton must show that there is a "reasonable probability" that, but for Grunick's failure to investigate, the result of the proceeding would have been different. *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.* In determining whether prejudice exists, "a court hearing an ineffectiveness claim must consider the

totality of the evidence before the judge or jury." *Id.* at 695. Further, the court "should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge and jury acted according to the law." *Id.* at 694.

"Coercive police activity is a necessary predicate to the finding that a confession is not 'voluntary' within the meaning of the Due Process Clause of the Fourteenth Amendment." *Colorado v. Connelly*, 479 U.S. 157, 167, 107 S. Ct. 515, 522, 93 L. Ed. 2d 473 (1986). While a defendant's mental condition may be a significant factor in the voluntariness inquiry, a defendant's mental condition, by itself and apart from its relation to official coercion, should never be dispositive. *Id.* at 164; *State v. Armstrong*, 72 S.W.3d 327, 330-31 (Mo. Ct. App. 2002) (citing *Connelly* for proposition that intoxication alone would not render defendant's statement involuntary without evidence of coercive police activity). Detective Bartlett testified that he and Detective Bowen never threatened or attempted to coerce Brotherton. (Resp't Ex. 8 at 46-47.) He further testified that he was not in his patrol uniform and never brandished his gun. *Id.* Detectives Bartlett and Bowen testified that they made casual conversation with Brotherton during the car ride to the Sheriff's Department and did not discuss his case. *Id.* at 43-46, 66-70.

Even if Grunick had called a St. Joseph's staff person or a psychiatrist who had evaluated Brotherton at the suppression hearing, that testimony would not have changed the evidence with regard to police coercion. Therefore, Brotherton cannot show a reasonable probability that, but for Grunick's failure to call such witnesses, his confession would have been suppressed. Because Brotherton's claim that Grunick was ineffective for failing to investigate and adduce evidence of his mental incompetency is not a substantial one, *Martinez* will not excuse procedural default. Finally, even if Brotherton's claim was not procedurally barred, it would be denied on the merits for the foregoing reasons.

### 3. Merits of Brotherton's Remaining Claims

Even if Brotherton's remaining ineffectiveness claims are not procedurally barred, they lack merit. Brotherton contends that Grunick failed to: consult with Brotherton before the suppression hearing, depose his arresting officers, file additional pretrial motions including motions to continue, and present evidence and call witnesses at trial. Assuming counsel was deficient, Brotherton cannot show that he was prejudiced. Brotherton must show by a preponderance of the evidence a reasonable probability that that his confession would have been suppressed or he would have been found not guilty, but for Grunick's deficient performance. *Strickland,* 466 U.S. at 694-95. The Court will address the prejudice resulting from each alleged deficiency in turn.

Brotherton contends that Grunick was ineffective in failing to consult with him and agreeing to move the suppression hearing up without his knowledge or consent. Brotherton asserts that he only found out Grunick was representing him and that the hearing had been moved up when Grunick called him 45 minutes before the hearing, making it impossible for Brotherton to attend because he was four hours away. Brotherton's account is largely corroborated by the record at the suppression hearing. Grunick states that he spoke with Brotherton during lunchtime and informed him of the proceeding, that Brotherton was a four-hour drive away, and that the defense was ready to proceed notwithstanding Brotherton's absence. (Resp't Ex. 8 at 32-33.)

Brotherton contends that Grunick failed to consult him about his version of events and therefore failed to properly raise Brotherton's assertions that he was not Mirandized and that he invoked his right to counsel during the car ride following his arrest. However, Grunick's motion to suppress reflects Brotherton's version of events. (Resp't Ex. 1 at 22-25.) Grunick's

15

questioning of Detective Bartlett at the suppression hearing established that the audio recording of the car ride was not available. (Resp't Ex. 8 at 48-50.) As a result, even if Brotherton had been present and testified at the suppression hearing, the issue of whether he validly waived his *Miranda* rights would have been a credibility determination as to whether Brotherton or Detectives Bartlett and Bowen should be believed. Without some other evidence to corroborate his account or discount the officers' account, Brotherton cannot show a reasonable probability that, if Grunick had properly consulted him, his confession would have been suppressed.

In addition, Brotherton contends that Grunick was ineffective in failing to depose Detectives Bartlett and Bowen before the suppression hearing, which he contends would have changed the outcome. Brotherton also contends that Grunick would have been better prepared to cross Detectives Bartlett and Bowen at trial if he had deposed them. This claim is too speculative to support a finding of prejudice. At the suppression hearing, Grunick cross-examined Detectives Bartlett and Bowen on what happened to the audio recording, their awareness of Brotherton's mental condition and medications at the time of his arrest, their failure to re-*Mirandize* Brotherton before his video interrogation, and whether he requested counsel. (Resp't Ex. 8 at 48-59, 71-75.) Grunick had a copy of the police report of Brotherton's arrest and elicited testimony that both officers knew Brotherton was on suicide watch and that Detective Bartlett had "some clues" that Brotherton "had some deficits." *Id*. at 48, 59, 72. He elicited similar testimony from Detective Bartlett at trial. *Id.* at 285-87. Brotherton has not shown that, had Grunick deposed Detectives Bartlett and Bowen, his confession would have been suppressed or he would have been found not guilty. Indeed, there appear to be few discrepancies in the officers' testimony and it is clear from the record that Grunick's primary defense strategy was to cast doubt on whether Brotherton actually penetrated R.B.'s anus, a

16

strategy aimed more toward undermining R.B.'s statements and testimony than that of the officers.

Brotherton further contends that Grunick was ineffective in failing to file additional pretrial motions, including motions to continue so that he could better prepare, and failing to present any evidence or call any witnesses at trial. Again, Brotherton's claim is too speculative to support a finding of prejudice. Brotherton cannot demonstrate how more time would have changed the outcome of the suppression hearing, since the weight of the available evidence showed that he validly waived his *Miranda* rights and his statements were not involuntary. In addition, at trial, there was overwhelming evidence against him on the molestation charge, namely, his confession, and substantial evidence from R.B. that his penis sometimes "slipped," penetrating her anus. Grunick deposed R.B. before trial and was able to cast at least some doubt as to whether Brotherton penetrated R.B.'s anus, given that the jury requested to view the video of R.B.'s interview again to determine the sodomy charge. Brotherton has not shown that Grunick could have performed better with additional time or additional investigation into potential witnesses. *See Siers v. Weber*, 259 F.3d 969, 974 (8th Cir. 2001) ("To establish prejudice from counsel's failure to investigate a potential witness, a petitioner must show that the witness would have testified and that their testimony probably would have changed the outcome of the trial.").

Finally, Brotherton argues that Grunick should have investigated the medical exam conducted on R.B. and was ineffective in failing seek a corrective instruction or a new trial when Detective Bartlett mentioned a tear at trial. Brotherton cannot show prejudice. There is no indication in the record that the medical exam would have been exculpatory and, on direct appeal, the Missouri Court of Appeals determined that R.B.'s statements and testimony were

17

sufficient to convict Brotherton on the sodomy charge. (Resp't Ex. 3.) Moreover, Brotherton cannot show a reasonable probability that if Grunick had requested a curative instruction or moved for a mistrial, the outcome of his case would have been different. "A mistrial is a drastic remedy only to be employed in extraordinary circumstances." *State v. Taylor*, 889 S.W.2d 124, 130 (Mo. Ct. App. 1994); *State v. Hall*, 829 S.W.2d 29, 31 (Mo. Ct. App. 1992) (holding trial court did not abuse discretion in denying motion for mistrial after police officer improper reference to uncharged crime). In addition, "[t]he failure to request a curative instruction does not, by itself, constitute constitutional error." *Nettles v. Roper*, No. 4:03-CV-68 CAS, 2006 WL 852391, at *6 (E.D. Mo. Mar. 30, 2006) (citing *Phea v. Benson*, 95 F.3d 660, 662 (8th Cir. 1996)).

The post-conviction motion court held that the record conclusively showed Brotherton was not entitled to relief on his motion which it recognized was based in part on a claim of ineffective assistance of counsel. (Resp't Ex. 4 at 22-23.) "Taken together, AEDPA and *Strickland* establish a 'doubly deferential standard' of review." *Williams v. Roper*, 695 F.3d 825, 831 (8th Cir. 2012) (citing *Cullen v. Pinholster*, 563 U.S. 170) (2011)). "So long as the state court's decision was not 'contrary to' clearly established federal law, the remaining question under the 'unreasonable application' clause of § 2254(d) is whether the state court's determination under the *Strickland* standard is unreasonable, not merely whether it is incorrect." *Williams*, 695 F.3d at 831 (*citing Harrington*, 562 U.S. at 101). This standard is difficult, and "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington*, 562 U.S. at 102. The state post-conviction motion court's decision was not contrary to or an unreasonable application of clearly established Federal law, nor was it

based on an unreasonable determination of the facts in light of the record before it. 28 U.S.C. § 2254(d). The Court finds that Brotherton's remaining ineffectiveness claims should be denied.

F.  **Ineffective Assistance of Post-Conviction Counsel (Ground 6)**

Brotherton argues that his post-conviction counsel was ineffective in failing to file an amended Rule 29.15 motion. Insofar as Brotherton asserts ineffectiveness of post-conviction counsel as an independent ground for relief, his claim is barred. 28 U.S.C. § 2254(i) ("ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief"); *Martinez v. Ryan*, 132 S. Ct. 1309, 1320, 182 L. Ed. 2d 272 (2012) (pursuant to § 2254(i) ineffectiveness of post-conviction counsel is not an independent ground for relief).

G.  **Post-Conviction Motion Court's Failure to Enter Adequate Findings of Fact and Conclusions of Law (Ground 5)**

Brotherton argues that the post-conviction motion court failed to enter adequate findings of fact and conclusions of law as required by Missouri Supreme Court Rule 29.15(J). However, 28 U.S.C. § 2254 "only authorizes federal courts to review the constitutionality of a state criminal conviction, not infirmities in a state post-conviction relief proceeding." *Williams-Bey v. Trickey*, 894 F.2d 314, 317 (8th Cir. 1990). "Because there is no federal constitutional requirement that states provide a means of post-conviction review of state convictions, an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition." *Id*. Thus, Brotherton's claim that the motion court failed to enter adequate findings of fact and conclusions of law is not cognizable in his federal habeas petition. *See Williams v. Roper*, No. 4:04CV888 RWS, 2007 WL 2080421, at *1-2 (E.D. Mo. July 16,

2007) (holding claim that motion court denied petitioner due process by failing to address all of the issues raised in the *pro se* Rule 29.15 motion was not cognizable in his federal petition).

IV.     **Conclusion**

Based on the foregoing, the Court finds that Brotherton's request for relief pursuant to 28 U.S.C. § 2254 should be denied. Further, because Brotherton has made no showing of denial of a constitutional right, the Court will not issue a certificate of appealability. *See* 28 U.S.C. § 2253(c)(2); *Tiedeman v. Benson,* 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** the Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 is **DENIED**. [Doc. 1.]

**IT IS FURTHER ORDERED** that a separate judgment will be entered this same date.

**IT IS FURTHER ORDERED** that, for the reasons stated herein, any motion by Tommy Wayne Brotherton for a Certificate of Appealability will be **DENIED**.

Dated this 31st day of March, 2016.

       /s/ Nannette A. Baker_____  
       NANNETTE A. BAKER  
       UNITED STATES MAGISTRATE JUDGE